# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs September 10, 2009

## MAURICE DARNELL TYLER v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2003-A-432      J. Randall Wyatt, Jr., Judge**

---

**No. M2008-02199-CCA-R3-PC - Filed May 21, 2010**

---

Petitioner, Maurice Darnell Tyler, was convicted of two counts of first degree murder and received a total effective sentence of life without the possibility of parole. Subsequently, Petitioner filed a petition for post-conviction relief, alleging that his trial counsel was ineffective. The post-conviction court denied the petition, and Petitioner now appeals. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JERRY L. SMITH and J.C. MCLIN, JJ., joined.

David M. Hopkins, Nashville, Tennessee, for the appellant, Maurice Darnell Tyler.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Kathy Morante, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## I.  Factual Background

The evidence adduced at Petitioner's trial revealed that in the early morning hours of November 25, 2002, Petitioner fired twenty-eight shots into a car that was parked outside the Outer Limit nightclub in Nashville, reloading once or twice during the shooting, killing Monte Campbell and Cayra Caruth. See State v. Maurice Darnell Tyler, No. M2005-00500-CCA-R3-CD, 2006 WL 264631, at *1 (Tenn. Crim. App. at Nashville, Feb. 1, 2006). The

State's leading witness, Jared Johnson,[1] identified Petitioner as the shooter and testified that after the shooting, Petitioner got into the passenger side of a dark-colored, four-door Saturn. Id. One of Caruth's friends testified that Petitioner saw the victims in the nightclub, walked past them three times, and looked at them with his hand in his pocket. Id. at *2. Former Lewisburg Police Officer Christopher Steele testified that victim Campbell was released on parole from prison on August 8, 2002. Id. at *4. Officer Steele stated that Campbell was in prison for an invasion of Petitioner's home. Id. Officer Steele said that while at the preliminary hearing on the home invasion, he overheard Petitioner say he would "get" Campbell when he got out of jail. Id. The Petitioner's co-defendant, Christopher Schultz, testified that he was the shooter and that Petitioner had not been involved in the crime. Id. at *5. However, Schultz admitted that he pled guilty to the murders, admitting to the stipulated facts that Schultz was the driver of the Saturn and Petitioner was the shooter. Id. at **5-6. Additionally, Schultz conceded that he lied to police in his first two statements, alternately claiming that he was not involved in the crimes and that he was alone in the getaway car. Id. at *6.

Based upon the foregoing evidence, Petitioner was convicted of the first degree premeditated murders of Campbell and Caruth and the felony murder of Caruth. The felony murder conviction was merged into the conviction for the premeditated murder of Caruth. Petitioner received a life sentence for the murder of Campbell, to be served concurrently with a sentence of life without the possibility of parole for the murder of Caruth.

Thereafter, Petitioner filed a pro se petition for post-conviction relief, alleging that his trial counsel was ineffective by failing to object to or appeal "the issue of the constructive amendment of count one of the indictment," failing to "raise the issue of the affidavit containing fraudulent misrepresentation of material facts which made the arrest unlawful for lack of probable cause," and failing to "raise and appeal the state's knowing use of false testimony." Counsel was appointed to represent Petitioner, and an amended post-conviction petition was filed, alleging additional grounds of ineffectiveness, including failing to call Detective Putnam to impeach eyewitnesses' testimony which differed from their prior statements; failing to call jail employees and attorneys who heard co-defendant Schultz confess to the murders; failing to present expert testimony on eyewitness identification; failing to request a jury view of the crime scene; failing to use crime scene photographs to establish the "extreme distance between the witnesses' location and the actual scene of the shootings"; failing to call Petitioner's mother, Penelope Tafoya, to testify that the Saturn

---

[1] The transcript of the post-conviction hearing refers to the victims as "Monty Campbell" and "Kyra Caruth." Additionally, the post-conviction transcript refers to "Jerry Johnson" as the eyewitness who positively identified Petitioner as the shooter. However, for clarity, we have used the spellings contained in the direct appeal opinion.

belonged to Schultz, not Petitioner; failing to allow Petitioner to testify that he was innocent and had moved to Nashville to avoid further trouble with victim Campbell; failing to adequately cross-examine Officer Steele regarding a threat Petitioner allegedly made against victim Campbell; and by failing to argue about the lack of premeditation in the killing of victim Caruth.

At the post-conviction hearing, Officer Steele testified that he heard Petitioner threaten that he would "get" victim Campbell years prior to the murders. Officer Steele conceded that the threat could have been made to someone other than the victim. Officer Steele stated that at trial he was not asked to clarify to whom the threat was directed. Nevertheless, Officer Steele said that when he heard victim Campbell had been killed, he immediately recalled the threat and thought Petitioner might be the perpetrator.

Christopher Schultz testified that prior to his guilty pleas, he informed attorneys Justin Johnson, Jonathan Wing, and Jonathan Farmer that he was the shooter and that Petitioner was not involved in the murders. Schultz said that he and victim Campbell went to school together before the shooting and that his home was burglarized by Campbell. Schultz said he informed his attorney, Wing, that he did not want to accept a guilty plea unless the factual stipulation provided that he was the shooter and that Petitioner was not involved in the murders. However, at the guilty plea hearing, the stipulated facts provided that Petitioner was the shooter and that Schultz was the getaway driver. Schultz said, "That must have been my attorney's fault because I never agreed to that, knowingly and willingly." Schultz stated that he remembered being cross-examined about his guilty pleas at Petitioner's trial.

Jonathan Wing, Schultz's trial attorney, testified that Schultz never wavered from his insistence that he was the shooter and that Petitioner was not involved in the murders. However, Wing stated that he was more inclined to believe the State's theory of the case than the version of events expounded by Schultz, noting that the proof was not consistent with Schultz's claims. Wing noted that Schultz lied in his first two statements to police. Wing said that he did not know why Schultz wanted to be considered the shooter and that he tried to explain to Schultz that even though there was no legal difference, "it's better to be the driver than to be the actual shooter in terms of trial, in terms of the situation." Wing said he could not recall if Petitioner's trial counsel contacted Schultz but would be surprised if it did not happen. Wing stated that he was not called to testify at Petitioner's trial regarding Schultz claiming to be the shooter.

Justin Johnson testified that he represented Petitioner at the preliminary hearing in general sessions court. Schultz told Johnson he was the shooter. Justin Johnson made sure that Schultz knew he was Petitioner's attorney and that Schultz's statement was thus not protected by attorney-client privilege. Because Schultz confessed to him, Justin Johnson

-3-

believed he might be called as a witness; therefore, he withdrew from representing Petitioner. He told both Wing and Petitioner's trial counsel about Schultz's statement. However, he was never called as a witness at Petitioner's trial.

Penelope Tafoya, Petitioner's mother, testified that although she and trial counsel discussed her being called as a witness at Petitioner's trial, she was never called. She said she would have testified that although the Saturn was registered in her name, she had purchased the car for Schultz because her credit was better; however, Schultz made the payments on the car. Ms. Tafoya said she never had control of the car, and it belonged to Schultz. She stated that she and Petitioner were "very close" to Schultz; he was Petitioner's friend and was like another son to her.

Petitioner testified that trial counsel should have called Detective Putnam to testify at trial. He explained that Detective Putnam interviewed witnesses at the scene and that his supplemental reports differed from those of other detectives.[2] Petitioner believed Detective Putnam could have emphasized discrepancies in the witnesses' descriptions of the shooter.

Petitioner asserted that trial counsel failed to call corrections officers or counselors who heard Schultz say he was the shooter. Petitioner opined that the testimony of the officers could have bolstered Schultz's credibility. Petitioner also complained that trial counsel did not sufficiently investigate Schultz's claim that he was accompanied by Earl Shannon, not Petitioner, on the night of the murders, maintaining that the Petitioner and Shannon "resemble a little bit." Petitioner said that Shannon was killed in Detroit and could not be called as a witness at his trial.

Petitioner said he asked trial counsel if he could take a polygraph or speak directly to the prosecutor, but trial counsel told Petitioner that neither was a good idea.

Petitioner said he wanted trial counsel to take the jury to the crime scene so they could see that Jared Johnson, who positively identified Petitioner as the shooter, could not have witnessed what he claimed. Petitioner said that the distance, the presence of other cars, and a ditch would have obstructed Jared Johnson's view. Petitioner stated that trial counsel told him the trial court would not authorize funding for the jury to view the crime scene. Petitioner also wanted trial counsel to obtain an eyewitness identification expert to challenge Jared Johnson's testimony, but counsel said the trial court would not authorize that expenditure. Petitioner maintained that Jared Johnson's testimony was particularly questionable because he initially made a 911 call saying he did not know who committed the

---

[2] Petitioner was represented by three attorneys at trial; however, all of Petitioner's ineffective assistance claims relate to his lead trial counsel.

murder then later identified Petitioner as the perpetrator. Petitioner alleged that Jared Johnson was "coerced" by the State to testify against him.

Petitioner said the Saturn used to tie him to the crimes belonged to Schultz, but he acknowledged that he had driven the car on occasion. He stated that counsel should have called Ms. Tafoya as a witness to explain that although the car was registered in her name, the car belonged to Schultz.

Petitioner maintained that trial counsel did not adequately cross-examine Officer Steele regarding his "false and misleading testimony" that Petitioner threatened Campbell. Petitioner denied making the threat; however, he said that even if the statement had been made, Officer Steele could not have determined that it was directed to Campbell because the other co-defendants were also in the courtroom. Petitioner said that if other officers were in the courtroom, trial counsel should have investigated to see if anyone else heard the statement. Petitioner said he moved to Nashville after the home invasion because he was "trying to get away from that whole situation." Petitioner stated that he did not know Campbell would be at the Outer Limit nightclub, explaining that he did not know Campbell was out of jail. Petitioner said Schultz's property was also taken during the home invasion, and he opined Schultz killed Campbell for that reason.

Petitioner said he wanted to testify at trial, but trial counsel advised him that he should not testify. On direct examination, Petitioner said he wanted to testify that he was not there and that he had nothing to do with the murders. However, on cross-examination, Petitioner denied saying that he would have testified he was not at the club that night and would have testified simply that he was not involved in the murders. Petitioner conceded that he was at the club on the night of the murders but maintained that he was not at the club with Schultz. Regardless, Petitioner stated that trial counsel never prepared him to testify because counsel believed he was "too emotional" to testify.

Petitioner's trial counsel testified that he was appointed to represent Petitioner at his arraignment. Trial counsel said he was aware Schultz had stated on multiple occasions that he, not Petitioner, was the shooter. In fact, trial counsel had conversations with Wing and Justin Johnson regarding Schultz's claim. Counsel stated that at Petitioner's trial, Schultz testified he was the shooter, and the jury saw a videotape on which Schultz stated he was the shooter. Trial counsel believed the testimony and the videotape were "pretty moving" and "pretty convincing." Trial counsel noted that when the videotaped statement was played, victim Caruth's father commented, "[Y]ou've killed my daughter" and was removed from the courtroom. Trial counsel opined that the family member's reaction lent credence to Schultz's testimony that he was the shooter. However, the State cross-examined Schultz regarding the facts stipulated to at his guilty plea proceeding, which provided that Petitioner

was the shooter. Trial counsel said he did not call additional witnesses to bolster Schultz's credibility with his prior consistent statements because he felt Schultz's testimony was sufficient.

Trial counsel stated that Schultz claimed to be with Earl Shannon at the time of the murders. Prior to trial, counsel learned Shannon had died, but he obtained a picture of Shannon for Schultz to identify at trial.

Trial counsel said he did not call Ms. Tafoya as a witness to corroborate Schultz's testimony that he owned the car because he was trying to put "distance" between Petitioner and Schultz. Counsel thought that if Ms. Tafoya testified, the jury would see the close ties between Petitioner's family and Schultz. Counsel noted that Petitioner and Schultz lived together and that Petitioner occasionally drove Schultz's car.

Trial counsel acknowledged that he did not request funds for an expert on eyewitness testimony, explaining that based upon the law at that time he did not believe such a request would be granted. He conceded that the law regarding eyewitness experts had changed since Petitioner's trial.

Trial counsel said that he cross-examined the young women who testified at Petitioner's trial regarding the inconsistencies in their descriptions of the shooter at trial and the descriptions they initially gave police. Trial counsel questioned Jared Johnson about the distance from which he claimed to have seen the shooter. Trial counsel did not believe Jared Johnson's testimony was coerced, but he believed the witness was mistaken. Counsel opined that Jared Johnson was a "showboater" who was "getting his fifteen minutes of fame" and "wanted to be the hero." Counsel stated that Jared Johnson's testimony, which the jury obviously believed, was "critical" proof against Petitioner.

Trial counsel acknowledged that the proof adduced at trial revealed that neither Petitioner nor Schultz knew victim Caruth and that she was an innocent bystander. Regardless, counsel stated that the proof revealed victim Caruth would have been clearly visible to the shooter by the time he reloaded and resumed shooting. Counsel said the defense strategy was to show that Petitioner was not present or involved in the murders; therefore, they did not challenge premeditation.

Counsel said he never told Petitioner that the court would not approve funds for the jury to visit the crime scene. Counsel thought he adequately informed the jury of the conditions at the scene through testimony, measurements, diagrams, and pictures. Further, counsel noted that a daytime viewing might have given the jury the wrong impression

regarding visibility since the crime happened at night. However, counsel conceded that he could have requested a nighttime viewing of the scene.

Trial counsel said he was aware prior to trial that Officer Steele would testify regarding a statement Petitioner made about victim Campbell. Trial counsel acknowledged he did not interview anyone who may have heard the statement, anyone who could corroborate Officer Steele's testimony, or the other participants in the home invasion to see if they had received any threats or had encountered problems with Petitioner since their convictions. Trial counsel conceded that he did not ask Officer Steele to whom Petitioner directed his threat. He said his understanding of Officer Steele's testimony was that the threat was directed toward Campbell.

Trial counsel did not recall having discussions with Petitioner about a polygraph. He acknowledged that he had previously utilized polygraph examinations to potentially sway a prosecutor who was unsure about whether to prosecute. However, trial counsel stated that, in the instant case, the prosecutor was convinced Petitioner was the shooter and that a polygraph examination would not have affected the decision to prosecute.

Trial counsel did not recall making a conscious decision to not call Detective Putnam regarding the variances in the witnesses' descriptions of the shooter at trial and the descriptions initially given to police. Regardless, trial counsel stated that it would have been obvious to the jury that he cross-examined witnesses from police reports and that he was able to elicit testimony regarding the varying descriptions of the shooter.

The post-conviction court determined that Petitioner had not established that his trial counsel was ineffective. On appeal, Petitioner contests this ruling.

## II. Analysis

To be successful in his claim for post-conviction relief, the petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2006). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we afford the post-conviction court's findings of fact the weight

of a jury verdict, with such findings being conclusive on appeal absent a showing that the evidence in the record preponderates against those findings. Id. at 578.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Moreover,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697).

Petitioner alleges that trial counsel was ineffective by (1) failing to ask Officer Steele whether Petitioner's threat was directed at victim Campbell or toward the other perpetrators of the home invasion; (2) failing to interview witnesses to verify Petitioner actually made the statement; (3) failing to present to the jury that there were other individuals toward whom the threat could have been directed; (4) failing to call Ms. Tafoya to testify that although the Saturn was registered in her name, the car actually belonged to Schultz; (5) failing to call Wing and Justin Johnson to testify that Schultz told them he was the shooter in order to rehabilitate Schultz's credibility; (6) failing to call Detective Putnam to testify that certain witnesses' descriptions of the shooter at trial were different from descriptions they initially gave police; (7) failing to request that the jury go to the crime scene to establish that Jared Johnson could not have seen the events of that night in the manner in which he testified; and (8) failing to allow Petitioner to testify at trial.

Regarding Petitioner's complaints about trial counsel's approach to Officer Steele's testimony, the post-conviction court found that the cross-examination of Officer Steele "forced Officer Steele to admit that he believed the Petitioner's statements were not serious threats and that the statements were not serious enough to elicit bringing the Petitioner in for

questioning or to write a report on the incident." Counsel maintained that based upon the information he had, he understood that the threat referred only to Campbell. Moreover, regarding Petitioner's complaint that trial court did not investigate whether anyone else heard the threats, we note that Petitioner failed to present any witnesses at the post-conviction hearing who heard the threat or would testify that Petitioner made no such comment. Generally, "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). We may not speculate on what benefit these witnesses might have offered to Petitioner's case, nor may we guess as to what evidence further investigation may have uncovered. Id. Accordingly, Petitioner has failed to demonstrate prejudice in this regard.

Regarding Petitioner's complaints that trial counsel failure to call Ms. Tafoya to testify that Schultz owned the Saturn, the post-conviction court found that counsel did not call Ms. Tafoya because he felt Schultz's testimony about the vehicle was sufficient and because he did not want to risk the jury discovering that Schultz and Petitioner's family were close. The post-conviction court found that counsel's decision was a reasonable strategy. Additionally, we note that the post-conviction court found trial counsel's decision not to call Detective Putnam to testify about the variance in the witnesses' descriptions of the shooter was reasonable, especially in light of counsel's testimony that he used police reports to cross-examine the witnesses and establish the inconsistencies in the witnesses' descriptions of the shooter. The trial court found that trial counsel brought out the inconsistencies and that trial counsel's strategy was not unreasonable. On appeal, this court may not second-guess the tactical or strategic choices of counsel unless those choices are based upon inadequate preparation, nor may we measure counsel's behavior by "20-20 hindsight." State v. Hellard, 629 S.W.2d 4, 9 (Tenn. 1982). Petitioner failed to prove prejudice relating to this issue.

Petitioner also contends that trial counsel was ineffective by failing to call Wing and Justin Johnson to bolster Schultz's credibility. The post-conviction court noted that Schultz's credibility was a major issue at trial and that his credibility was "severely damaged by the self-serving facts adopted into his plea testimony and by his statements to police – all suggesting that he was not the shooter." The court found that introducing evidence of prior consistent statements would not have negated the presence of the inconsistent statements. Therefore, the court found that Petitioner was not prejudiced by counsel's failure to call witnesses to testify regarding Schultz's prior consistent statements. The record does not preponderate against this finding.

The post-conviction court found that trial counsel established the scene of the crime by using witnesses' testimony, diagrams, and photographs. Therefore, taking the jury to view the crime scene was unnecessary. Additionally, the court found that a daytime viewing of

the scene would have potentially been detrimental to Petitioner "by showing an empty parking lot with excellent daytime visibility." Accordingly, the court found no ineffectiveness in this regard. We can discern nothing in the record to preponderate against this finding.

Finally, Petitioner complains that trial counsel prevented him from testifying at trial. As the post-conviction court noted, the trial transcript revealed that during a <u>Momon</u> hearing at trial, Petitioner understood his right to testify and that he made a knowing and voluntary decision not to testify. The post-conviction court therefore found that there was no evidence that trial counsel "prevented the Petitioner from testifying on his own behalf." Again, the record supports the trial court's finding.

### III. Conclusion

Based upon the foregoing, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE

-10-